IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALONZO N. LAX,

                      Plaintiff,

vs.                                       No. 05-4030-SAC

JO ANNE B. BARNHART,
Commissioner of Social Security,

                      Defendant.

MEMORANDUM AND ORDER

This social security appeal comes before the court on objections to the magistrate judge's report and recommendation.[1] The Commissioner denied plaintiff's application for supplemental security income ("SSI") benefits, and the magistrate recommends reversing and remanding that decision. The Commissioner has timely objected to the magistrate's report and recommendation.

**Standard of review**

---

[1] The court referred this administrative appeal to the United States Magistrate Judge for report and recommendation which the Magistrate Judge filed on October 27, 2005.

"De novo review is statutorily and constitutionally required when written objections to a magistrate's report are timely filed with the district court." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citations omitted). Rule 72(b) of the Federal Rules of Civil Procedure requires a district judge to "make a de novo determination upon the record ... of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." Those parts of the report and recommendation to which there has been no objection are taken as true and judged on the applicable law. *See Campbell v. United States District Court for the Northern Dist. of California*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879 (1974).

The district court has considerable judicial discretion in choosing what reliance to place on the magistrate judge's findings and recommendations. *See Andrews v. Deland*, 943 F.2d 1162, 1170 (10th Cir. 1991) (citing *United States v. Raddatz*, 447 U.S. 667 (1980)), *cert. denied*, 502 U.S. 1110 (1992). When review is de novo, the district court is " 'free to follow ... or wholly ... ignore' " the magistrate judge's recommendation, but it " 'should make an independent determination of the issues' " without giving " 'any special weight to the prior' " recommendation. *Andrews*, 943 F.2d at 1170 (quoting *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir.1988)). In short, the district

court may accept, reject, or modify the magistrate judge's findings, or recommit the matter to the magistrate with instructions.  *See* 28 U.S.C. § 636(b)(1)(C) (1994).

This court's duty is to determine whether the Secretary's decision of nondisability is supported by substantial evidence and whether the Secretary applied the correct legal standard.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Substantial evidence is defined as:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)).  "Evidence is not substantial 'if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion.' " *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir. 1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

*Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir.2004) (quotation omitted). "Thus, we may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Id.* (quotation omitted).

**Disability claims, generally**

A five-step sequential process is used in evaluating a claim of disability. *Williams,* 844 F.2d at 750. First, a claimant must not be employed. Second, a claimant must have impairments which are severe enough to limit basic work activities. Third, a claimant whose impairments meet or equal the impairments listed in the regulations as warranting the award of benefits is presumed to be disabled. Fourth, a claimant who can perform work done in the past cannot obtain benefits. If the claimant bears his burden of proof on the first four steps, he establishes a prima facie case of disability. *Id.* The burden of proof then shifts to the commissioner at step five to show that the claimant retains the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989).

**Mental retardation - generally**

Plaintiff claims that he is disabled under the listing for mental retardation and that the ALJ erred at step three by concluding that his impairments do not meet or equal one of the listed impairments. In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Williams,* 844 F.2d at 750, (citing 20 C.F.R. §§

4

404.1520(d), 416.920(d) (1986).  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  *Id.*  If not, the evaluation proceeds to the fourth step.

The ALJ determined at step three that plaintiff did not meet the requirements for mental retardation under Section 12.05 of the Commissioner's Listing of Impairments.  In order to be found disabled based on mental retardation under that section, a plaintiff must prove that he satisfies the definition in the introductory paragraph of Section 12.05 and that he satisfies the criteria listed in subsection A, B, C, or D of that Section.  *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 Mental Disorders, at 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").

Plaintiff alleges he meets the criteria found in 12.05B. "Listing 12.05B requires significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22 and an I.Q. of 59 or less." *Sanderlin v. Barnhart*, 2003 WL 24046922, *2 (E.D.N.C. 2003).  The ALJ found that plaintiff failed to satisfy both parts of this test, *i.e*., the adaptive functioning requirement and the IQ requirement.  The court first examines this latter requirement.

**IQ of 59 or less**

Plaintiff acknowledges that he must prove, and alleges that he has proven, that he has a "*valid* verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added). The ALJ agreed that plaintiff's IQ tests showed his IQ to be 59 or less, but found the IQ tests were not valid.

**Plaintiff's IQ tests**

The record shows that plaintiff took three IQ tests. The ALJ examined only two of the three because a court had previously ruled that the third was not reliable.[2] Neither party takes issue with that approach, which this court finds to be correct, thus this court limits its consideration to the same two IQ tests examined by the ALJ.

The first set of scores considered by the ALJ was reported by psychologist Arthur McKenna, who evaluated plaintiff in May of 2000 for the Commissioner. He reported plaintiff's IQ scores on the WAIS-III as: verbal, 60;

---

[2]*See Lax v. Barnhart*, No. 01-4127-JAR, Dk. 18 (9/19/2003) (adopting Dk. 17, report and recommendation of Magistrate Judge Reid, which found the IQ test administered by the Department of Corrections lacked sufficient indicia of reliability.)

performance, 62; and full scale, 57.[3]  Thereafter, the decision on remand found that "Dr. McKenna clearly renounces the scores reported."  R. 322.  Accordingly, after remand, plaintiff was evaluated in May of 2001 by another consultative psychologist, Dr. Robert Barnett.  He reported plaintiff's IQ scores on the WAIS-III as: verbal, 58; performance, 54; and full scale, 52.  Plaintiff claims these two tests are valid and both show his verbal, performance, or full scale IQ to be 59 or less.

The ALJ discounted both the 2000 and the 2001 IQ test scores as invalid.  Such a decision is within the discretion of an ALJ.  *See Mitchell v. Barnhart*, 2004 WL 1626409, *4 (D. Kan. 2004).  "The ALJ may discount an IQ score as invalid for a variety of reasons, so long as there is substantial evidence in the record to support his conclusion."  *McKown v. Shalala*, 5 F.3d 546, 1993 WL 335788, *3 (10th Cir. 1993).  The court thus examines whether substantial evidence supports the ALJ's conclusion.

**Invalidity of IQ tests**

The ALJ stated that the record as a whole supports finding the tests

---

[3] A valid score of 59 or less on any one of these three components is sufficient.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

invalid, but he also made specific findings in support of that conclusion.[4]  R. 325.
He first found that "both clinicians who tested the claimant state that he presents
and functions in the manner expected from a person who functions in the range of
borderline intellectual functioning."  R. 324.

Evidence supports this finding.  Both consultants suggested plaintiff is
in the borderline range of intellectual functioning.  Dr. McKenna twice noted that
plaintiff is "not mentally retarded," but is "functioning in the borderline range."  R.
206-07, 237-38.  Dr. McKenna additionally noted that plaintiff's "scores appear to
be an underestimation of his cognitive abilities," his "verbal reasoning appeared to
be functioning at the concrete level of abstraction," and found plaintiff's effort
"inadequate," his responses "vague" and "unreliable," and plaintiff missed easy
items but got more difficult items correct. R. 237.

Dr. Barnett noted that plaintiff "scored in the moderately mentally
retarded range . . . , but Mr. Lax gives the impression of higher intellectual
functioning in a face-to-face interview."  He found plaintiff's social functioning
more consistent with "mildly mentally retarded range, or possibly the borderline

---

[4]The ALJ made specific findings in direct support of his conclusion that
plaintiff failed to prove the requisite deficits in adaptive functioning before age 22,
but also referenced them in support of his conclusion that the IQ tests are invalid.
R. 324-25.

range of intellectual functioning." R. 482.

The ALJ additionally found that no professional, including plaintiff's treating psychiatrist, had described plaintiff's behavior indicative of mental retardation. R. 324. The record supports this finding as well. Other than the consultative examiners' reports, there is no mention in the medical records of mental retardation. For over a year-and-a-half, plaintiff was treated by a psychiatrist whose records are void of any mention of mental retardation. R. 497-552. Instead, his preliminary assessment indicated that plaintiff "seems average intelligence, but reports he has learning disability." R. 551.

The ALJ next found that plaintiff's school records suggest learning disability, not mental retardation. This finding is warranted, as detailed above in the court's discussion of plaintiff's school records. The ALJ additionally stated that "while he generally did not pass these courses it is obvious that the school was setting his schedule for a child with a learning disability, not mental retardation. The grades achieved can very well reflect the claimant's use of drugs beginning when he was 12 (Exhibits 12E and 1F)." R. 324. As the magistrate judge properly noted, nothing in the cited exhibits or elsewhere in the record has been found to support the conclusion that plaintiff began using drugs at the age of 12. The record does, however, show that plaintiff began using alcohol at the age of 13 and began to

9

"drink/use drugs" as a teenager. R. 188; 418. Thus the ALJ's conclusion that plaintiff's poor grades could be attributable to factors other than mental retardation is supported by the evidence.

The ALJ next noted that plaintiff consistently refers to his impairment as "learning disability" and never as "mental retardation." This, too, is correct. R. 113, 114, 551.

The ALJ next found that plaintiff's historic abilities are not consistent with mental retardation. He noted such activities as purchasing and using drugs for a number of years, which demonstrated a modicum of sophistication and planning, and never being arrested, which demonstrated his ability to be circumspect when he wished. Plaintiff took and passed a driving test, secured a drivers' license, drove a car, read the newspaper daily, and completed the social security forms with assistance. Although the record contains some contradictory evidence on the latter items, the ALJ's resolution of the evidence is supported by substantial evidence, *see* R. 97, 98, 113, 287 and shall thus be upheld. *See Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1030 (10th Cir. 2001).

The ALJ further found that the severity, frequency and quality of plaintiff's physical pain was not supported by the objective evidence, and found the same to be true with regard to plaintiff's mental impairments. R. 325-26. The

ALJ additionally expressly found that plaintiff lacked credibility. An administrative law judge is in the best position to observe the demeanor of witnesses at a hearing, and, as a result, an ALJ's credibility findings deserve special deference. *Zoltanski*, 372 F.3d at 1201 (quotation omitted).

The ALJ next noted, "presumably, [claimant] did not present to either the court or prison personnel as mentally retarded." R. 324. The record shows that plaintiff was incarcerated for seven or more years. R. 206, R. 158-186. Although some prison records are properly included in the record, none suggest mental retardation. *See* R. 158-186.[5]

The record also contains evidence supporting the ALJ's finding that "the claimant is either not performing consistently on the tests or he is deliberately attempting to have low scores." R. 324-25. A comparison of the 2000 and the 2001 IQ tests shows inconsistent results, and the narrative reports of the examiners suggest intentionally low scores. Dr. McKenna reported that plaintiff's effort was minimal and inadequate, his responses were unreliable, his scores were an underestimation of his cognitive abilities, and he got easy items wrong and more difficult items correct. R. 236-38. Dr. Barnett was more receptive of the results,

---

[5]Plaintiff's objection to admission of some prison records was sustained. R. 597.

but also noted that plaintiff "gives the impression of higher intellectual functioning" than the scores reveal, and was possibly in the borderline range of intellectual functioning. R. 482.

The ALJ next found that no examiner had vouched for the validity of the tests. Plaintiff challenges this finding by asserting that Dr. Barnett found the test results valid when he stated that "the validity of [Mr. Lax's] responses appears satisfactory." R. 481. It is true that in the initial paragraph of his report entitled "Behavioral Observations," Dr. Barnett said plaintiff "made a good effort to respond to my questions, and the validity of his responses appears satisfactory." R. 481. But those comments are part of the psychologist's general observations of plaintiff's behavior at the interview, rather than an assessment of plaintiff's performance on the test. His "Diagnostic Impression" states: "Mr. Lax scored in the moderately mentally retarded range on the WAIS-III, but Mr. Lax gives the impression of higher intellectual functioning in a face-to face interview. I suspect his social functioning may be more consistent with an individual who is functioning in the mildly mentally retarded range, or possibly the borderline range of intellectual functioning." R. 482.

The ALJ's conclusion is reasonable in finding that Dr. Barnett's comment about "validity" refers to plaintiff's responses to the psychologist's

interview questions, rather than to plaintiff's effort on the test, or to the validity of the scores produced.  Although the statement in question is susceptible to more than one rational interpretation, the ALJ's interpretation or resolution of the evidence is supported by substantial evidence and shall thus be upheld.  *See Custer County Action Ass'n*, 256 F.3d at 1030.

The ALJ additionally noted that the "large variations in results raise legitimate questions concerning their validity." R. 325.  It is unclear whether the variation alluded to is the difference between the scores on plaintiff's 2000 IQ test (of 60, 62 and 57) and those on his 2001 IQ test (58, 54, and 52), or to the difference between the scores within a single test (*e.g.*, to the five point difference between 52 and 58 on the 2001 test), or whether it refers to some other comparison (*e.g.*, to the ten point difference between the 52 on the 2001 test and the 62 on the 2000 test).  Plaintiff contends the variation in the test results is not "large" and such a conclusion is a medical judgment for which the ALJ has no expertise.

The ALJ cites to no authority to establish that the variation in results is "large," and the court agrees that this subjective characterization lacks probative value.  The court agrees that the variations in the test results are curious but they do not, without explanation, suffice to show the invalidity of the tests.

Nonetheless, the ALJ's statement that the large variation in results

raises questions about the validity of the tests does not require reversal. Even absent that factor, the remaining reasons relied upon by the ALJ are sufficient to constitute substantial evidence in support of his conclusion that plaintiff failed to prove that he has a valid verbal, performance, or full scale IQ of 59 or less. *See e.g., Markosyan v. Sullivan*, 1991 WL 89994, 933 F.2d 1014 (9th Cir. 1991) (Table) (finding two IQ tests with scores of 59 and 52 not credible based on tester's opinion that plaintiff was not mentally retarded, that plaintiff exhibited "minimal effort" on the examinations, that plaintiff was "attempting to convince the examiner of an innate lack of ability," and that plaintiff lacked overall credibility); *Lipford v. Secretary of Health and Human Services*, 762 F.2d 1009, 1985 WL 13103, *2 (6th Cir. 1985) (finding IQ score of 52 invalid where tester indicated that plaintiff's motivation was poor for test validation purposes, that plaintiff's intelligence level actually was in the high range of mental retardation and that plaintiff was capable of working forty hours per week); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (even a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior); *Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998) (An ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist,

particularly if the score is inconsistent with the claimant's daily activities and behavior).

Because substantial evidence supports the ALJ's conclusion that plaintiff failed to show that he had a valid verbal, performance, or full scale IQ of 59 or less, the ALJ's decision shall be affirmed. The court finds it unnecessary to determine whether or not the ALJ erred in its analysis of plaintiff's deficits in adaptive functioning.

IT IS THEREFORE ORDERED that the Commissioner's objection to the magistrate's report and recommendation is granted, and the decision of the Commissioner is affirmed.

Dated this 9th day of March, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge